UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IN RE RULE 45 SUBPOENA ISSUED          **NOTICE OF MOTION**
TO ERIE COUNTY DISTRICT                **TO QUASH SUBPOENA**
ATTORNEY'S OFFICE
DATED JUNE 7, 2022                      _____-cv-_____

_____

STATE OF NEW YORK    )
COUNTY OF ERIE       ) ss.
CITY OF BUFFALO      )

        PLEASE TAKE NOTICE, that upon the attached Affidavit of JERRY MARTI, Assistant District Attorney, of counsel to JOHN J. FLYNN, District Attorney of Erie County, as sworn to on the 30th day of June, 2022, and upon the accompanying Memorandum of Law and Exhibits, the undersigned will move before the Hon. _____, United States Court Judge, United States District Court for the Western District of New York, 2 Niagara Square, Buffalo, New York, on the ___ day of July, 2022 at 10:00 in the forenoon, or as soon thereafter as counsel may be heard, for an Order quashing the subpoena dated June 7, 2022 issued to the Erie County District Attorney's Office, pursuant to Rule 45 of the Federal Rules of Civil Procedure, and for such other relief as may be just and proper. Pursuant to the Local Rules of Civil Procedure, Rule 7(a)(1), the Erie County District Attorney's office intends to file and serve reply papers.

DATED:      Buffalo, New York      Respectfully Submitted,
            June 30, 2022

                                JOHN J. FLYNN
                                DISTRICT ATTORNEY
                                Erie County
                                BY: JERRY MARTI
                                Assistant District Attorney
                                of Counsel
                                25 Delaware Avenue
                                Buffalo, New York 14202

TO: David A. Adelman, Esq.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IN RE RULE 45 SUBPOENA ISSUED
TO ERIE COUNTY DISTRICT
ATTORNEY'S OFFICE
DATED JUNE 7, 2022

**AFFIDAVIT
IN SUPPORT
OF MOTION**

\_\_\_\_\_-cv-\_\_\_\_\_

---

STATE OF NEW YORK   )
COUNTY OF ERIE     ) ss.
CITY OF BUFFALO    )

JERRY MARTI, being duly sworn, deposes and says:

1. I am an attorney duly admitted to practice law before this Court.

2. I am an Assistant District Attorney, appearing of counsel to JOHN J. FLYNN, District Attorney of Erie County, on behalf of the People of the State of New York ("People").

3. This affidavit is submitted in support of the People's motion seeking an Order to quash the "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" dated June 7, 2022 directed to the Erie County District Attorney's Office ("Subpoena"). A copy of the Subpoena is attached hereto as Exhibit "A".

## CRIMINAL PROCEEDINGS

4. Payton Gendron ("Defendant") was arrested and indicted following the shootings committed at a Tops Friendly Markets Store in Buffalo, New York on May 14, 2022 ("Tops Shootings"). A copy of the indictment is attached hereto as Exhibit "B".

5. On May 27, 2022, the Hon. Craig Hannah ordered that there will be no extrajudicial comments, including any discussion of the facts or evidence, associated with Defendant's case. A copy of the Order Regarding Extrajudicial Comments is attached as Exhibit "C".

- 1 -

6. On June 15, 2022, Payton Gendron was charged in the United States District Court for the Western District of New York for allegedly committing the Tops Shootings on May 14, 2022. A copy of the Criminal Complaint is attached hereto as Exhibit "D".

## SUBPOENA AND CIVIL ACTION

7. The County of Cook ("Cook County") issued the Subpoena from the United States District Court, Northern District of Illinois in the action of *Cutberto Viramontes, et al v. The County of Cook, et al*, No. 1:21-cv-04595 (N.D.Ill. 2021).

8. In the underlying action, plaintiffs seek a declaratory judgment that the ban on semiautomatic rifles as set forth in the Blair Holt Assault Weapons Ban ("Ordinance") prevents plaintiffs from exercising their fundamental right to keep and bear arms as guaranteed under the Second and Fourteenth Amendments to the United States Constitution. In addition, plaintiffs seek a preliminary and permanent injunction prohibiting the defendants from enforcing the Ordinance. A copy of the Complaint dated and filed August 27, 2021 is attached hereto as Exhibit "E".

9. The Erie County District Attorney's Office is not a party to this declaratory judgment action.

10. The Subpoena herein was served by Cook County via certified mail on June 10, 2022. The return date is June 30, 2022 at 10:00 a.m. (*See* Exh. A.)  Pursuant to an agreement on June 22, 2022 between the People and Cook County, there is an extension of time to respond to the Subpoena on or before July 11, 2022.

11. On June 24, 2022, the People served its written objections to the Subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure on Cook County by certified mail. A copy of the written objections is attached hereto as Exhibit "F".

12. According to the Rider attached to the Subpoena, Cook County requests "all non-privileged records in the possession of the Erie County District Attorney's Office related to the

shooting at Tops Friendly Markets Store, 1725 Jefferson Ave, Buffalo NY 14208 on May 14, 2022"

("Tops Shootings") be produced at the Cook County State's Attorney's Office, 50 W. Washington,

5th Floor, Chicago, IL 60602. No personal appearance is required by the Subpoena.

13.   After the People conferred with Cook County, there has been no withdrawal of

the Subpoena.  As a result, this motion became necessary to protect Defendant's right to a fair trial

in the state and federal criminal proceedings and challenge the undue burden placed on the People.

14.   For the reasons set forth more fully in the accompanying Memorandum of Law,

the Subpoena must be quashed by this Court pursuant to Rule 45 of the Federal Rules of  Civil

Procedure.

WHEREFORE, it is respectfully requested that this Court issue an Order quashing

the Subpoena dated June 7, 2022 in its entirety, and for such other relief as may be just and proper.

JERRY MARTI
Assistant District Attorney
Erie County District
 Attorney's Office
25 Delaware Avenue
Buffalo, New York  14202
(716) 858-2447
jerry.marti@erie.gov

Subscribed and sworn to before me
this 30th day of June, 2022.

KRISTY A. DULAK
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 08/27/2025.

- 3 -

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IN RE RULE 45 SUBPOENA ISSUED        **AFFIDAVIT**
TO ERIE COUNTY DISTRICT              **OF SERVICE**
ATTORNEY'S OFFICE
DATED JUNE 7, 2022                     _____-cv-_____

_____

STATE OF NEW YORK    )
COUNTY OF ERIE       ) ss:
CITY OF BUFFALO     )

           KRISTY A. DULAK, being duly sworn, deposes and says:

           That she is over the age of twenty-one (21) years and is employed by the County of Erie at the Erie County District Attorney's Office; that on June 30, 2022, she served the within Notice of Motion to Quash Subpoena with Affidavit in Support of Motion, Memorandum of Law, and Exhibits upon David A. Adelman, attorney for the County of Cook, addressed to ASA David A. Adelman, Cook County State's Attorney's Office at his office located at 50 W. Washington, 5th Floor, Chicago, IL 60602, by depositing a true copy of same, securely enclosed in a postpaid wrapper, in a post office box regularly maintained by the United States Postal Service at the Erie County Hall in the City of Buffalo, New York in the above-captioned matter.

                               KRISTY A. DULAK

Subscribed and sworn to before
me on June 30, 2022.

ELAINE J. WILLIAMS
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 09/04/2025.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IN RE RULE 45 SUBPOENA ISSUED                    __-CV-_____
TO ERIE COUNTY DISTRICT
ATTORNEY'S OFFICE
DATED JUNE 7, 2022


_____




## MEMORANDUM OF LAW


**Non-Party Erie County District Attorney's Office's
Motion to Quash County of Cook's Subpoena**




                                        JOHN J. FLYNN
                                        Erie County District Attorney

JERRY MARTI
Assistant District Attorney,
of Counsel to Non-Party
Erie County District Attorney's Office
25 Delaware Avenue
Buffalo, New York  14202
(716) 858-2447
jerry.marti@erie.gov

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ i

PRELIMINARY STATEMENT .................................................................. 1

FACTUAL BACKGROUND ....................................................................... 2

    A.  State Criminal Proceedings in Buffalo, New York........................ 2

    B.  Federal Criminal Proceedings in United States District Court for the Western District of New York ................................................. 3

    C.  Federal Lawsuit in Illinois Against County of Cook ..................... 3

    D.  County of Cook's Subpoena ............................................................ 4

ARGUMENT .............................................................................................. 5

I.  This Court is the Appropriate Venue to Consider the People's Motion to Quash ..................................................................................... 5

II.  The Subpoena Prejudices Defendant's Right to a Fair Trial in Criminal Proceedings ............................................................................ 6

III.  The Subpoena is Overbroad and Unduly Burdensome on Non-Party .... 8

IV.  The Subpoena Seeks Records Protected by the Law Enforcement Privilege ............................................................................................... 10

V.  The Subpoena Defies Rule 45's 100 Mile Limit...................................... 11

CONCLUSION .......................................................................................... 13

TABLE OF AUTHORITIES

PAGE

<u>FEDERAL CASES</u>

*Aguilar v. Immigration and Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*,
 259 F.R.D. 51 (S.D.N.Y. 2009) ................................................ 10 , 11

*American Plan Administrators v. South Broward Hospital District*,
 No. 21-MC-2663 (KAM) (TAM), 2021 WL 6064845, at *2 (E.D.N.Y. Dec. 22, 2021) ...... 5

*Bowers v. Walsh*, 277 F.Supp.2d 208 (W.D.N.Y. 2003) ............................... 7

*Breaking Media, Inc. v. Jowers*, 21 Misc. 194 (KPF), 2021 WL 1299108, at *5
 (S.D.N.Y. April 7, 2021) ........................................................ 8

*Burnett v. Wahlburgers Franchising LLC*, 16 CV 4602 (WFK) (CLP),
 2018 WL 10466827, at * 2 (E.D.N.Y. Oct. 4, 2018) ................................. 5

*Chinn v. Elmwood Franklin School*, 15-CV-938G (Sr),
 2018 WL 2431886, at *1 (W.D.N.Y. May 30, 2018) .............................. 8 , 9

*CSS, Inc. v. Herrington*, 354 F.Supp.3d 702  (N.D. Tex. 2017) ........................ 12

*Cutberto Viramontes, et al v. the County of Cook, et al*  (No. 1:21-cv-04595) ............. 3

*Dou v. Carillon Tower/Chicago LP*,  No. 18 CV-7865,
 2020 WL 5502345, at *2 (N.D. Ill. Sept. 11, 2020) ............................. 6 , 11

*Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628 (C.D. Cal. 2018) .............. 6

*In re Terrorist Attacks on September 11, 2001*, 03-MDL-10570 (GBD) (SN),
 2020 WL 6161732, at *8 (S.D.N.Y. Oct. 21, 2020) ................................. 10

*Lamie v. U.S. Trustee*, 540 U.S. 526  (2004) ...................................... 12

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ............................... 7

*Neogenix Oncology, Inc. v. Gordon*, CV 14-4427 (JFB) (AKT),
 2017 WL 1207558, at *10 (E.D.N.Y. March 31, 2017) ............................... 9

*Nova Biomedical Corp. v. I-STAT Corp.*, 182 F.R.D. 419 (S.D.N.Y. 1998) .............. 8

*Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV,
 2015 WL 1722481 (S.D. Fla. April 15, 2015) ..................................... 6

*Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001,
 2017 WL 2462823 (C.D. Ill. July 7, 2017) .................................... 5 , 6

i

*Schiller v. City of New York*, 252 F.R.D. 204 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Syposs v. U.S.*, 181 F.R.D. 224 (W.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111 (D. Conn. 2005) . . . . . . . 8

*U.S. v. International Business Machines Corp.*, 83 F.R.D. 97 (S.D.N.Y. 1979) . . . . . . . . . . . 8

## FEDERAL RULES

Fed. R. Civ. P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 , 8 , 12

Fed. R. Civ. P. 45(c)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 , 11

Fed. R. Civ. P. 45(d)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 , 7

Federal Rule of Civil Procedure 45(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.D. Ill. LR 5.6, 83.15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL STATUTES

18 U.S.C. § 249(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 924(c)(1)(A)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 924(j)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATUTES

Penal Law § 110.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Penal Law § 125.25(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Penal Law § 125.27(1)(a)(viii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Penal Law § 265.03(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Penal Law § 485.05(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Penal Law § 490.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Non-party, Erie County District Attorney's Office (the "People") respectfully submits this memorandum of law in support of its motion to quash the subpoena served on June 10, 2022 by the County of Cook pursuant to Federal Rule of Civil Procedure 45(d)(3). As required by the Federal Rules, the People timely bring this motion before the Court where compliance is required.

## PRELIMINARY STATEMENT

This is a motion to quash the non-party subpoena issued by the County of Cook ("Cook County") dated June 7, 2022 seeking the production of all non-privileged documents from the People "related to the shooting at Tops Friendly Markets Store, 1275 Jefferson Ave., Buffalo, NY 14208 on May 14, 2022" ("Subpoena"). This Court is the proper venue to hear the motion to quash because the Subpoena requests documents from the People's place of business in Buffalo, New York. Accordingly, the place of compliance is in Buffalo, New York.

Currently, there are two criminal actions pending against Payton Gendron ("Defendant"), one in state court and the other in the United States District Court for the Western District of New York, for the shootings committed at the Tops Friendly Market Store in Buffalo, New York on May 14, 2022 ("Tops Shootings"). Pursuant to an agreement between the Erie County District Attorney and defense counsel on the state action, Buffalo City Court issued an Order limiting initial comments on the charges and prohibiting any further extrajudicial comments to the public ("Order"). The basis for this agreement and the Order was to preserve the fairness and integrity of the criminal proceeding. By requesting all non-privileged documents, disclosure pursuant to the Subpoena creates the substantial likelihood of depriving the defendant of his right to a fair trial and creates an undue burden on the People.

In addition, the Subpoena is overly broad and unduly burdensome on the People. As a non-party, the People are entitled to greater protection from a Subpoena in which neither the need

1

nor relevance outweigh the undue burden in responding to its requests.  Likewise, the People's documents relating to the Tops Shootings are protected under the law enforcement privilege.

In any event, the Subpoena is procedurally defective by seeking the production of documents in Chicago, Illinois - more than 100 miles from the People's place of business in Erie County.  Accordingly, the People respectfully request that the Court quash the Subpoena.

## FACTUAL BACKGROUND

### A.  State Criminal Proceedings in Buffalo, New York

On June 1, 2022, Payton Gendron was indicted for the Tops Shootings committed on May 14, 2022.  Under Indictment No. 00877-2022, defendant was charged with one count of Domestic Act of Terrorism Motivated by Hate in the First Degree (Penal Law § 490.28), 10 counts of Murder in the First Degree (Penal Law § 125.27(1)(a)(viii)), 10 counts of Murder in the Second Degree, as a Hate Crime (Penal Law §§ 125.25(1); 485.05(1)(b)), three counts of Attempted Murder in the Second Degree, as a Hate Crime (Penal Law §§ 110.00, 125.25(1), 485.05(1)(b)), and one count of Criminal Possession of a Weapon in the Second Degree, an Armed Felony (Penal Law § 265.03(3)).  *See* Exh. B.

Following the indictment, the People and defense counsel agreed to limit extrajudicial comments in order to protect the integrity and fairness of the proceedings.  Accordingly, by Order dated May 27, 2022, the People were allowed to comment on the charges contained in the indictment, the elements of the charges, and explain the relevant criminal procedure following defendant's arraignment on the indictment.  Any further public remarks regarding the subject matter of the defendant's case were prohibited "until the charges are resolved in Erie County or Supreme Court, whether by conviction, acquittal, or some other manner," or an application is made to amend

2

the Order. *See* Exh. C. The criminal proceedings are currently pending in Erie County.

**B. Federal Criminal Proceedings in the United States District Court for the Western District of New York**

Subsequently, Payton Gendron was charged in federal court for allegedly committing the Tops Shootings on May 14, 2022. Pursuant to the Criminal Complaint (Case No. 22-mj-124) dated June 15, 2022 and Affidavit in Support of Criminal Complaint dated June 15, 2022, the defendant was charged with 10 counts of Hate Crime Resulting in Death (18 U.S.C. § 249(a)(1)), three counts of Hate Crime Involving Bodily Injury and Attempt to Kill (18 U.S.C. § 249(a)(1)), 10 counts for the Use of a Firearm to Commit Murder During and in Relation to a Crime of Violence (18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1)), and three counts for the Use and Discharge of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)(A)(iii)). *See* Exh. D. The criminal proceedings are currently pending in federal court.

**C. Federal Lawsuit in Illinois Against County of Cook**

On August 27, 2021, in the matter of *Cutberto Viramontes, et al v. the County of Cook, et al* (No. 1:21-cv-04595), plaintiffs Cutberto Viramontes, Rubi Joyal, Christopher Khaya, Second Amendment Foundation ("SAF"), and Firearms Policy Coalition ("FPC") (collectively "Plaintiffs") filed a declaratory judgment action in the United States District Court, Northern District of Illinois ("Declaratory Judgment Action"). According to the Complaint, Plaintiffs allege that the Blair Holt Assault Weapons Ban ("Ordinance") violates the Second Amendment to the United States Constitution. Specifically, the Ordinance bans the manufacture, sale, or possession of assault weapons in Cook County with limited exceptions. An assault weapon is defined as "any semiautomatic rifle with a capacity to accept a magazine holding more than ten rounds of ammunition" if it has one of five distinguishing features, including specific models listed in the

Ordinance.  As a result of the Ordinance, Plaintiffs are prohibited from using their choice of assault weapons.  *See* Complaint, ¶¶ 18-26, 40-45, attached as Exh. E.

As a result, Plaintiffs seek a declaratory judgment stating that the Ordinance prevents Plaintiffs from exercising their right to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution.  Likewise, Plaintiffs seek a preliminary and permanent injunction prohibiting the enforcement of the Ordinance by the listed defendants: County of Cook; Toni Preckwinkle, the County Board President and Chief Executive Officer of Cook County; Kimberley M. Foxx, the State's Attorney; and Sheriff Thomas Dart.  *See* Complaint ¶¶ 14-17, 71, attached as Exh. E.  The Erie County District Attorney's Office is not listed as a party to the Declaratory Judgement Action.

## D.  County of Cook's Subpoena

The Subpoena dated June 7, 2022 directed to the People relates to the Declaratory Judgment Action.  In sum, the Subpoena requests that all of the non-privileged records in People's file related to the Tops Shootings be produced at the Cook County State's Attorney's Office, without the requirement for personal appearance.  Specifically, the Subpoena seeks: all "incident reports" from May 14, 2022 relating to the injuries and fatalities"inflicted by Payton Gendron," as well as his apprehension and arrest; all "firearm reports" regarding the weapons and ammunition used, including the damage inflicted by such weapons and ammunition, at the Tops shootings; and all medical examiner reports "related to victims of that shooting" including but not limited to the named victims. *See* Exh. A.  The Erie County District Attorney's Office is a non-party located in a different state, over 100 miles from Cook County.

4

## ARGUMENT

**I. This Court is the Appropriate Venue to Consider The People's Motion to Quash**

        As a threshold matter, this Court is the appropriate venue to adjudicate the People's motion to quash for two reasons. First, this Court has the power to quash the subpoena because the place of compliance is in Buffalo, New York. Second, the policy considerations behind the Federal Rules of Evidence support this Court's adjudication of the motion to quash.

        Pursuant to Federal Rules of Civil Procedure 45, a motion to quash a non-party subpoena must be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). The place of compliance for a non-party subpoena seeking "documents, electronically stored information, or tangible things" is a place "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). It is undisputed that the Erie County District Attorney's Office regularly transacts business in Buffalo, New York and in the surrounding areas within Erie County, New York. Accordingly, the District Court for the Western District of New York is the proper venue for the People's motion to quash. *See American Plan Administrators v. South Broward Hospital District*, No. 21-MC-2663 (KAM) (TAM), 2021 WL 6064845, at *2 (E.D.N.Y. Dec. 22, 2021); *Burnett v. Wahlburgers Franchising LLC*, 16 CV 4602 (WFK) (CLP), 2018 WL 10466827, at * 2 (E.D.N.Y. Oct. 4, 2018).

        Similarly, the District Court for the Central District of Illinois has reached the same conclusion. The case in *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823 (C.D. Ill. July 7, 2017) is particularly instructive here. In *Raap*, the plaintiff located in Wisconsin served a subpoena to produce documents on the non-party, Bank of Springfield, located in Illinois. The subpoena instructed the Bank of Springfield to produce the documents in Madison, Wisconsin. In response, the Bank of Springfield filed a motion to quash in the Central District of Illinois,

Springfield Division.  In quashing the subpoena, the Court held that it had jurisdiction because the place of compliance is tied "to the location of the subpoenaed person or entity." *Id*. at *3.

Additionally, policy considerations support this Court's adjudication of the motion to quash.  According to the Advisory Committee Notes for the 2013 amendments, Rule 45 was amended, in part, to protect non-parties who receive subpoenas.  In particular, the policy considerations behind Rule 45 would be "defeated if a party could demand compliance in a location more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person and still require the nonparty to adjudicate a dispute over that subpoena in a distant forum." *Id*. Moreover, this policy consideration has been recognized in the District Court for the Northern District of Illinois - the same issuing court for the Subpoena in this case.  *See Dou v. Carillon Tower/Chicago LP*,  No. 18 CV-7865, 2020 WL 5502345, at *2 (N.D. Ill. Sept. 11, 2020).

Lastly, the Courts generally refer to a corporation's headquarters when determining the place of compliance for a subpoena.  *See, e.g.*, *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018);  *see also Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 1722481 (S.D. Fla. April 15, 2015).  In this case, the People's main offices are located in Buffalo, New York and it regularly conducts its business there.  This Court is, therefore, the proper court to adjudicate the motion to quash.  To hold otherwise would only serve to undermine the policy considerations behind the 2013 amendments of Rule 45.

## II.  The Subpoena Prejudices Defendant's Right to a Fair Trial in Criminal Proceedings

Pursuant to the Buffalo City Court Order and to protect Defendant's right to a fair trial in the state and federal criminal proceedings, this Court should quash the Subpoena seeking all non-privileged documents from the People's file.  In order to ensure fairness to Defendant after the publicized Tops Shootings, the Erie County District Attorney and defense counsel agreed to limit public remarks regarding the pending criminal proceedings in Erie County.  On May 27, 2022,

Buffalo City Court ordered limitations on extrajudicial comments to protect the fairness and integrity of the criminal proceedings. After defendant's arraignment, the People were allowed the opportunity to comment on the indictment and charges. Any further remarks were prohibited until the case was resolved in court, or an application was made to amend the Order. *See* Exh. C.

"Due process requires that the accused receive a trial by an impartial jury free from outside influences." *See Bowers v. Walsh*, 277 F.Supp.2d 208, 214 (W.D.N.Y. 2003), quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). Even in 1966, the Supreme Court of the United States was mindful of the "pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors." *Sheppard,* 384 U.S. at 362. This due process concern has only been compounded over the years with the proliferation of social media outlets. Specifically, when out-of-court materials impact the jury's deliberations, the defendant is deprived of his Sixth Amendment right to a trial by jury. *See Bowers*, 277 F.Supp.2d at 218; *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976) (Due Process Clause of Fourteenth Amendment guarantees same right in state criminal prosecutions).

Here, the Subpoena's request for documents constitutes a discussion "of the facts or evidence associated with [defendant's] case" before trial. *See* Exh C. According to the Subpoena, the People are obligated to provide all non-privileged documents in the file, including incident reports, firearm reports, and medical examiner reports prior to the completion of discovery or a judicial determination of the admissibility of evidence at trial. This places an undue burden on the People. Fed. R. Civ. P 45(d)(3)(A). In addition to violating the Buffalo City Court Order, the People's compliance with the Subpoena would create the substantial likelihood of exposing the prosecution's records to social media interests, tainting the jury in the state and federal criminal proceedings, and depriving defendant of a fair trial under the Sixth and Fourteenth Amendments. *Id.* Accordingly, this Court should quash the Subpoena to protect defendant's right to a fair trial in two separate criminal proceedings.

### III.  The Subpoena is Overbroad and Unduly Burdensome on Non-Party

Cook County's subpoena is substantially overbroad and unduly burdensome since it seeks the entire file of non-privileged records in the possession of the People - without significant parameters - during the pendency of two criminal proceedings.  Given the vastness of the Subpoena, Cook County seeks irrelevant information to the underlying declaratory judgment action and places an undue burden on the People.  And, therefore, this Court should quash the subpoena.

As a non-party, the People are entitled to greater protection than a party litigant.  It is well settled that the courts accord special weight to the burden placed on a non-party in responding to a subpoena.  *See Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005); *Nova Biomedical Corp. v. I-STAT Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (non-party status entitles "consideration regarding expense and inconvenience").  Whether a subpoena imposes an "undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party" and depends on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *Travelers*, 228 F.R.D. at 113, quoting *U.S. v. International Business Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979); *see also Breaking Media, Inc. v. Jowers*, 21 Misc. 194 (KPF), 2021 WL 1299108, at *5 (S.D.N.Y. April 7, 2021).

"The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)."  *Chinn v. Elmwood Franklin School*, 15-CV-938G (Sr), 2018 WL 2431886, at *1 (W.D.N.Y. May 30, 2018), quoting *Syposs v. U.S.*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998).  Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." In particular, the Advisory Committee Notes to the 2015 Amendment explain that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." *Chinn v. Elmwood Franklin School*, 15-CV-938G (Sr), 2018 WL 2431886, at *2.

Here, there is no showing by Cook County regarding the relevance or need for an expansive subpoena request seeking all of the non-privileged documents in the People's file, "including but not limited to" incident reports from May 14, 2022, firearm reports relating to the May 14, 2022 Tops Shootings, and all medical examiner reports for named or unnamed victims. *See* Exh. A. While the declaratory judgment action deals with an Ordinance banning assault weapons, Cook County can readily obtain information about the alleged assault weapon used during the TOPS Shooting and related information by referencing the Federal Criminal Complaint and social media outlets, all of which are available to the public. *See* Exh. D.

Likewise, other than the incident and firearms reports, Cook County does not set any time parameters on its request. Since the Subpoena only lists three particular items, the remainder of the request amounts to mere speculation that information might be relevant to the claims at issue in the declaratory judgment action. As such, the Subpoena amounts to no more than a fishing expedition, which is patently improper for discovery. *See Neogenix Oncology, Inc. v. Gordon*, CV 14-4427 (JFB) (AKT), 2017 WL 1207558, at *10 (E.D.N.Y. March 31, 2017).

Additionally, the People are faced with the burdensome task of responding to a Subpoena while protecting the defendant's right to a fair trial and upholding the ban to evidentiary disclosure placed by the Buffalo City Court Order. *See* Exh. C. As the Erie County District Attorney's Office is in the business of prosecuting criminal cases, it's resources and expenses have been taxed in resorting to judicial relief in contesting an overbroad subpoena. In light of these

circumstances, the burden and expense of responding to the subpoena greatly outweigh any benefit. And, therefore, this Court should quash the subpoena.

## IV.  The Subpoena Seeks Records Protected by the Law Enforcement Privilege

The Subpoena seeks the People's entire non-privileged file directly related to a criminal investigation and pending criminal proceedings in state and federal court.  As such, these records are protected under a qualified law enforcement privilege.  *See Aguilar v. Immigration and Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*, 259 F.R.D. 51, 56 (S.D.N.Y. 2009). Specifically, the law enforcement privilege protects information that would affect law enforcement techniques and procedures, undermine confidential sources, threaten the safety or privacy of witness or law enforcement personnel involved in an investigation, or otherwise interfere with an investigation.  *See In re Terrorist Attacks on September 11, 2001*, 03-MDL-10570 (GBD) (SN), 2020 WL 6161732, at *8 (S.D.N.Y. Oct. 21, 2020).

While Cook County does not seek privileged materials, the People assert that the entire file is subject to the law enforcement privilege.  In order to meet the threshold in asserting the privilege, there must be a "clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted." *Aguilar*, 259 F.R.D. at 57, quoting *Schiller v. City of New York*, 252 F.R.D. 204, 207 (S.D.N.Y. 2008).  While the courts have accepted an affidavit or declaration at the time a party files its response to discovery, the People are barred by court order from discussing the facts or evidence relating to the Tops Shootings until the conclusion of the criminal proceedings.  *See* Exh. C.  This Order was put in place to ensure that the defendant receives a fair trial and to protect the integrity of the criminal proceedings.  As such, any disclosure of the People's file will negatively impact these considerations.  Accordingly, the People have established the requisite threshold showing for the privilege. *Aguilar*, 252 F.R.D. at 56-57.

Once the threshold has been met, the Court must balance the various interests of the party and non-party. Here, Cook County has failed to establish the relevance, importance, or need in requesting all of the non-privileged documents in the People's file. Likewise, Cook County has failed to show that any materials could not be found through alternative sources. In contrast, the People could be found in contempt of an Order, deprive the defendant of his right to a fair trial, and impede any investigation during the criminal proceedings. Indeed, any release of information prior to a suppression hearing or determination of the admissibility of evidence at trial would directly impact the defendant's case. Based on these factors, the need for non-disclosure greatly outweighs the need for disclosure. *Id.* at 57. For these reasons, the Court must quash the Subpoena.

## V.  The Subpoena Defies Rule 45's 100 Mile Limit

In any event, Cook County improperly noticed the place of compliance in Chicago, Illinois - over 100 miles - from the Erie County District Attorney's Office. As such, this Court should quash the Subpoena. Pursuant to Rule 45(c)(2)(a) of the Federal Rules of Civil Procedure, a subpoena may command the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person."

Here, the Erie County District Attorney's Office regularly transacts business and maintains its main offices in Buffalo, New York. The Subpoena improperly requested the unlimited production of non-privileged documents at the Cook County State's Attorney's Office in Chicago, Illinois - well over 100 miles from Buffalo, New York. Accordingly, this Court should quash the Subpoena by protecting the interests of a non-party governmental agency. *See Dou v. Carillon Tower/Chicago LP*, No. 18 CV-7865, 2020 WL 5502345, at *2 (N.D. Ill. Sept. 11, 2020).

Admittedly, some courts have refused to follow the plain language of Rule 45 of the Federal Rules of Civil Procedure. Instead, these courts have held that the place of compliance is the

11

one listed on the subpoena. *See, e.g., CSS, Inc. v. Herrington*, 354 F.Supp.3d 702, 709 (N.D. Tex. 2017). But, as illustrated in the *Herrington* case, the Court's rationale does not support this conclusion. In *Herrington*, the Court acknowledged that the purpose of protecting a non-party is defeated by requiring compliance over 100 miles from the nonparty's place of business and also requiring the non-party to travel to a distant forum to resolve a dispute over the subpoena. *Id.* at 710.

Nonetheless, the Court reasoned that "motions to quash often are filed in the court corresponding to the improper place of compliance stated in the subpoena." *Id.* at 710. First, this assumes that the company involved in litigation has the resources to have local counsel at the ready in the distant forum. Additionally, whether that is true in every jurisdiction is not known, and only serves to underscore the undue burden placed on a non-party state governmental agency in arguing the dispute in another state. For instance, in this case, the People are required to apply for admission pro hac vice, find local counsel, and are not permitted to file motion papers unless approved by the court in the United States District Court for the Northern District of Illinois, all while filing a timely motion to quash. *See* N.D. Ill. LR 5.6, 83.15.

The Court further reasoned that the court "will have no way of dependably making the fact-intensive determination whether the subpoena's stated place of compliance is within 100 miles of where the subpoenaed person" regularly transacts business without hearing from the subpoenaed person. *Id.* While this may apply to certain individuals, or even companies, this reasoning finds no merit with the Erie County District Attorney's Office - a state government agency that lists its location in its name. Accordingly, this Court should not carve out an exception to a plain reading of Fed. R. Civ. P. 45, but enforce it according to its terms. *See, generally, Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

<u>CONCLUSION</u>

For all of the foregoing reasons, the Erie County District Attorney's office requests that this Court enter an Order quashing the Subpoena in its entirety, and for such other and further relief as the Court deems appropriate.

DATED:        Buffalo, New York
              June 30, 2022

                              Respectfully submitted,

                              JOHN J. FLYNN
                              DISTRICT ATTORNEY

              By:        _____
                              JERRY MARTI
                              Assistant District Attorney
                              Erie County District
                               Attorney's Office
                              25 Delaware Avenue
                              Buffalo, New York  14202
                              (716) 858-2447
                              jerry.marti@erie.gov

13

**EXHIBIT A**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Northern District of Illinois

| | |
|---|---|
| CUTBERTO VIRAMONTES, et al | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:21-cv-04595 |
| THE COUNTY OF COOK, et al | ) |
| | ) |
| *Defendant* | ) |

*(stamp: 2022 JUN 16 PM 3:08 25 DELAWARE AVE DISTRICT ATTORNEY)*

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Erie County District Attorney's Office, ATTN: District Attorney John J. Flynn Paul Williams, Chief of Appeals
via email to paul.williams@erie.gov and 25 Delaware Avenue, 6th Floor, Buffalo, NY 14202

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Rider. No personal appearance required.

| Place: Cook County State's Attorney's Office. 50 W. Washington, 5th Floor Chicago, IL 60602 | Date and Time: 06/30/2022 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/07/2022

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ David A. Adelman |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
The County of Cook _____, who issues or requests this subpoena, are:

ASA David A. Adelman, CCSAO, 50 W. Washington, 5th Floor, Chicago, IL 60602 david.adelman@cookcountyil.gov

312-603-3151

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:21-cv-04595

# PROOF OF SERVICE

## *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows:  Erie County District Attorney's

Office, Attn. District Attorney John J. Flynn Paul Williams, Chief of Appeals, 25 Delaware Avenue, 6th Fl. Buffalo,

NY 14202. Certified Receipt #7009 2820 0001 9760 0786  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

        **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        **(i)** expressly make the claim; and
        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**RIDER**

**Subpoena to Erie County District Attorney's Office**

**DOCUMENTS TO BE PRODUCED**

All non-privileged records in the possession of the Erie County District Attorney's Office related to the shooting at Tops Friendly Markets Store, 1275 Jefferson Ave, Buffalo NY 14208 on May 14, 2022. This request includes, but is not limited to:

1.  Any and all incident reports from May 14, 2022 related to the apprehension and arrest of Payton Gendron and the injuries and fatalities inflicted by Payton Gendron;

2.  Any and all firearm reports regarding the type of weapons and ammunition used, and/or damage inflicted by such weapons and ammunition, at the May 14, 2022 Tops shooting.

3.  All medical examiner reports related to victims of that shooting, including but not limited to:

    a.  Roberta A. Drury, 32 years-old;

    b.  Margus D. Morrison, 52 years-old;

    c.  Andre Mackniel, 53 years-old;

    d.  Aaron Salter, 55 years-old;

    e.  Geraldine Talley, 62 years-old;

    f.  Celestine Chaney, 65 years-old;

    g.  Heyward Patterson, 67 years-old;

    h.  Katherine Massey, 72 years-old;

    i.  Pearl Young, 77 years-old;

    j.  Ruth Whitfield, 86 years-old;

    k.  Zaire Goodman, 20 years-old;

    l.  Jennifer Warrington, 50 years-old;

m.  Christopher Braden, 55 years-old

n.  Any other victim of the May 14, 2022 shooting who is not listed.

**KIMBERLY M. FOXX**
**STATE'S ATTORNEY**
RICHARD J. DALEY CENTER
50 W. WASHINGTON, 5TH FLOOR
CHICAGO, ILLINOIS 60602

ASA DAVID ADELMAN



CERTIFIED MAIL™

BISUBURBAN IL 604

10 JUN 2022 PM 3 L

7009 2820 0001 9760 0786



US POSTAGE PITNEY BOWES

ZIP 60602    $ 007.53⁰
02 4W
0000363283 JUN 10 2022

Erie County District Attorney's Office
Attn:  District Attorney John J. Flynn Paul Williams,
Chief of Appeals
25 Delaware Avenue, 6th Floor
Buffalo, NY 14202

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

14202-390368

**EXHIBIT B**

SUPREME/COUNTY COURT : ERIE COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

                    against                                    ECDA Legacy No. 00877-2022

PAYTON GENDRON

THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

FIRST COUNT: DOMESTIC ACT OF TERRORISM MOTIVATED BY HATE IN THE FIRST DEGREE, in violation of Penal Law §490.28, in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of, or serious physical injury to, five or more other persons, caused the death of at least one person, to wit: ROBERTA DRURY, and caused the death of four or more additional persons, to wit: HEYWARD PATTERSON, PEARL YOUNG, RUTH WHITFIELD, CELESTINE CHANEY, AARON SALTER, ANDRE MACKNIEL, MARGUS MORRISON, KATHERINE MASSEY, and GERALDINE TALLEY, none of whom were participants in the criminal transaction, and the defendant did so in whole or in substantial part because of the perceived race and/or color of such person or persons regardless of whether that belief or perception was correct.

SECOND COUNT: AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of ROBERTA DRURY, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause

serious physical injury to or the death of an additional person, caused the death of HEYWARD PATTERSON, who was not a participant in the criminal transaction.

THIRD COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of HEYWARD PATTERSON, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of PEARL YOUNG, who was not a participant in the criminal transaction.

FOURTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of PEARL YOUNG, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of RUTH WHITFIELD, who was not a participant in the criminal transaction.

FIFTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death

of another person, caused the death of RUTH WHITFIELD, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of CELESTINE CHANEY, who was not a participant in the criminal transaction.

SIXTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of CELESTINE CHANEY, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of AARON SALTER, who was not a participant in the criminal transaction.

SEVENTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of AARON SALTER, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of ANDRE MACKNIEL, who was not a participant in the criminal transaction.

EIGHTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of ANDRE MACKNIEL, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of MARGUS MORRISON, who was not a participant in the criminal transaction.

NINTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of MARGUS MORRISON, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of KATHERINE MASSEY, who was not a participant in the criminal transaction.

TENTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of KATHERINE MASSEY, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of GERALDINE TALLEY, who was not a participant in the criminal transaction.

ELEVENTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE FIRST DEGREE, in violation of Penal Law §125.27(1)(a)(viii), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, being more than 18 years old at the time of the commission of the crime, and with intent to cause the death of another person, caused the death of GERALDINE TALLEY, who was not a participant in the criminal transaction, and, as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person, caused the death of ROBERTA DRURY, who was not a participant in the criminal transaction.

TWELFTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of ROBERTA DRURY, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of ROBERTA DRURY, regardless of whether the belief or perception was correct.

THIRTEENTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of HEYWARD PATTERSON, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of HEYWARD PATTERSON, regardless of whether the belief or perception was correct.

FOURTEENTH COUNT: AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of PEARL YOUNG, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of PEARL YOUNG, regardless of whether the belief or perception was correct.

FIFTEENTH COUNT: AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of RUTH WHITFIELD, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of RUTH WHITFIELD, regardless of whether the belief or perception was correct.

SIXTEENTH COUNT: AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of CELESTINE CHANEY, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of CELESTINE CHANEY, regardless of whether the belief or perception was correct.

SEVENTEENTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of AARON SALTER, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of AARON SALTER, regardless of whether the belief or perception was correct.

EIGHTEENTH COUNT: AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of ANDRE MACKNIEL, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of ANDRE MACKNIEL, regardless of whether the belief or perception was correct.

NINETEENTH COUNT: AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of MARGUS MORRISON, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of MARGUS MORRISON, regardless of whether the belief or perception was correct.

TWENTIETH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of KATHERINE MASSEY, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of KATHERINE MASSEY, regardless of whether the belief or perception was correct.

TWENTY-FIRST COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, caused the death of GERALDINE TALLEY, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of GERALDINE TALLEY, regardless of whether the belief or perception was correct.

TWENTY-SECOND COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

ATTEMPTED MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 110.00, 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, attempted to cause the death of ZAIRE GOODMAN, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of ZAIRE GOODMAN, regardless of whether the belief or perception was correct.

TWENTY-THIRD COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

ATTEMPTED MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 110.00, 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, attempted to cause the death of CHRISTOPHER BRADEN, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of another person, regardless of whether the belief or perception was correct.

TWENTY-FOURTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

ATTEMPTED MURDER IN THE SECOND DEGREE, as a HATE CRIME, in violation of Penal Law §§ 110.00, 125.25(1), 485.05(1)(b), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, with intent to cause the death of another person, attempted to cause the death of JENNIFER WARRINGTON, and intentionally committed this act in whole or in substantial part because of a belief or perception regarding the race and/or color of another person, regardless of whether the belief or perception was correct.

TWENTY-FIFTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses PAYTON GENDRON of the following crime:

CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE, AN ARMED FELONY, in violation of Penal Law §265.03(3), in that the said PAYTON GENDRON, on or about the 14th day of May, 2022, in this County, knowingly possessed a loaded firearm, to wit: an assault weapon.



S/JOHN J. FLYNN

JOHN J. FLYNN  *CCG*
DISTRICT ATTORNEY OF ERIE COUNTY

**EXHIBIT C**

At a term of the Buffalo City Court, held in
and for the City of Buffalo, on the 27th of
May, 2022.

PRESENT:  HON. CRAIG HANNAH
Buffalo City Court Judge

STATE OF NEW YORK
CITY COURT  :  CITY OF BUFFALO

THE PEOPLE OF THE STATE OF NEW YORK

v

PAYTON GENDRON,

Defendant

**ORDER REGARDING
EXTRAJUDICIAL COMMENTS**

Erie County DA Legacy No. 00877-
2022

STATE OF NEW YORK )
COUNTY OF ERIE ) ss.
CITY OF BUFFALO )

Upon agreement between BRIAN K. PARKER, ESQ., ROBERT J. CUTTING, ESQ., and
DANIEL DUBOIS, ESQ., attorneys for the defendant, and JOHN J. FLYNN, District Attorney of
Erie County, on May 27, 2022, in an effort not to impact the integrity and fairness of these
proceedings, it is hereby

ORDERED that Erie County District Attorney JOHN J. FLYNN and his representatives
are permitted to make public comment and take questions on this case following
defendant's arraignment on indictment in Superior Court.  Such comments and answers
will be limited to the charges contained in the indictment, the elements of the charges, and
an explanation of the relevant criminal procedure.  There will be no discussion of the facts
or evidence associated with the case.

It is agreed that, after these comments are made, the District Attorney and his representatives, and the attorneys for the defendant, will refrain from extrajudicial public remarks regarding the subject matter of this case until after the charges are resolved in Erie County or Supreme Court, whether by conviction, acquittal, or some other manner.

Should the need arise, the People and/or the defense may make application to the assigned judge to modify or amend this order.  The order dated May 25, 2022 and captioned as "Order Restraining Extrajudicial Comments" is terminated and is superseded by this Order which addresses the defendant's application.


*Craig D. Hannah*
_____
Hon. Craig Hannah
Buffalo City Court Judge


Granted:        This 27th day of May, 2022.

**EXHIBIT D**

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Western District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | Case No.   22-mj-124 |
| | ) | |
| PAYTON GENDRON | ) | |
| | ) | |
| *Defendant* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of _____ May 14, 2022 _____ in the county of _____ Erie _____ in the
_____ Western _____ District of _____ New York _____ , the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 249(a)(1) (10 counts) | Hate Crime Resulting in Death |
| 18 U.S.C. § 249(a)(1) (3 counts) | Hate Crime Involving Bodily Injury and Attempt to Kill |
| 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1) (10 counts) | Use of a Firearm to Commit Murder During and in Relation to a Crime of Violence |
| 18 U.S.C. § 924(c)(1)(A)(iii) (3 counts) | Use and Discharge of a Firearm During and in Relation to a Crime of Violence |

This criminal complaint is based on these facts:

*See* Attached Affidavit, incorporated herein by reference.

[X]   Continued on the attached sheet.

Affidavit and Criminal Complaint submitted
electronically by e-mail in .pdf format. Oath
administered, and contents and signature
attested to me as true and accurate
telephonically pursuant to Fed.R.Crim.P. 4.1
and 4(d):

Date:   June 15 2022

City and state:   Buffalo, New York

*Christopher J. Dlugokinski*
*Complainant's signature*

Christopher J. Dlugokinski, Special Agent, FBI
*Printed name and title*

*H. Kennett Schroeder*
*Judge's signature*

Hon. H. Kenneth Schroeder, Jr., U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF ERIE        )        SS:
CITY OF BUFFALO       )

    I, **CHRISTOPHER J. DLUGOKINSKI**, being duly sworn, depose and state the following:

## INTRODUCTION

    1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have served as an FBI Special Agent since May 2018 and am currently assigned to FBI Buffalo Division Joint Terrorism Task Force ("JTTF"). As an FBI Special Agent, I am responsible for investigating violations of federal criminal law, including violations of federal civil rights and firearms laws. During my career with the FBI, I have participated in investigations involving violent crime, drug trafficking networks, organized crime and racketeering influenced corrupt organizations ("RICO"), street gangs, and national security matters (including international terrorism). In addition, I have had the opportunity to work with numerous FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated these crimes in the Western District of New York.

    2.    This affidavit is submitted in support of a criminal complaint charging PAYTON GENDRON ("GENDRON") with violations of 18 U.S.C. §§ 249(a)(1) (hate

crime resulting in death and hate crime involving bodily injury and attempt to kill), 924(c)(1)(A)(iii) and 924(j)(1) (use of a firearm to commit murder during and in relation to a crime of violence), and 924(c)(1)(A)(iii) (use and discharge of a firearm during and in relation to a crime of violence).

3.      I am familiar with the facts and circumstances of this investigation, such familiarity having been gained through my personal knowledge based upon my participation in this investigation; statements by and/or reports provided to me by law enforcement personnel of federal, state, and local agencies; witness interviews; video footage from a GoPro camera recovered from GENDRON; information developed through public sources to include social media accounts linked to GENDRON; interviews of various witnesses; review of surveillance camera footage; records checks of various public and law enforcement databases; records obtained from Discord, Inc. ("Discord") pursuant to a federal search warrant; and other information developed by law enforcement officers and intelligence analysts working on this investigation.

4.      Because this affidavit is being submitted for a limited purpose, that is, to establish probable cause that GENDRON committed the specified offenses, I have not presented all of the facts of this investigation to date.

## RELEVANT STATUTES

5.      Title 18, United States Code, Section 249(a)(1) makes it a federal crime for a person to willfully cause bodily injury to any person or, through the use of a firearm, to

attempt to cause bodily injury to any person, because of the actual or perceived race or color of the person. Sections 249(a)(1)(B)(i) and (ii) provide for increased penalties when the offense results in death or when the offense involves an attempt to kill. A violation of section 249(a)(1) is a federal crime of violence.

6.      Title 18, United States Code, Section 924(c)(1)(A)(iii) makes it a federal crime to knowingly use or carry a firearm during and in relation to a crime of violence for which the person may be prosecuted in a court of the United States and includes increased penalties when the firearm is discharged. Section 924(j)(1) provides for additional increased penalties when, in the course of a violation of section 924(c)(1)(A)(iii), the perpetrator causes the death of another person, and the killing is a murder as defined in 18 U.S.C. § 1111. Section 1111 defines "murder" as the unlawful killing of a human being with malice aforethought.

## FACTS ESTABLISHING PROBABLE CAUSE

7.      On May 14, 2022, at approximately 2:30 p.m., GENDRON – an 18-year-old white male from Conklin, New York – committed a mass shooting attack targeting Black people at Tops Friendly Market at 1275 Jefferson Avenue in Buffalo, New York ("Tops"). The mass shooting, which GENDRON live-streamed on the Internet, resulted in the deaths of 10 Black people, and non-fatal gunshot wounds to one (1) Black person and two (2) Caucasian people. GENDRON's motive for the mass shooting was to prevent Black people from replacing white people and eliminating the white race, and to inspire others to commit similar attacks.

3

8.     At the time of the attack, GENDRON arrived at Tops in a blue Ford Taurus ("Taurus"), drove to the front of the store, and came to a stop. He emerged from the car wearing a tactical-style helmet, camouflage clothing, body armor, and a GoPro video camera, and carrying a loaded Bushmaster XM-15 .223 caliber rifle and multiple loaded magazines. After exiting the Taurus, GENDRON aimed the rifle at a Black person ("Victim 1") walking in the parking lot and shot and killed Victim 1. GENDRON immediately started shooting at other Black people in the parking lot and near the entrance to Tops. During this rapid succession of shots, GENDRON shot and injured one Black person ("Victim 2") and shot and killed two Black people ("Victim 3" and "Victim 4"). A Black security guard, who had been standing near Victims 2 and 3, retreated inside the store. After GENDRON shot Victim 4, he fired several shots through the front window of the store and went to the entrance. As he approached the entrance, he shot Victim 3 again while Victim 3 was on the ground to ensure that Victim 3 was dead. Victim 2, who was lying motionless on the ground near Victim 3, survived and was able to flee the scene after GENDRON entered the store.

9.     After shooting the first four victims, killing three of them, GENDRON entered the store, and immediately shot and killed two more Black people ("Victim 5" and "Victim 6"), who were on the ground. At that time, GENDRON and the armed Black security guard ("Victim 7") exchanged gunfire; GENDRON aimed at, shot, and killed Victim 7.

10.     After GENDRON killed Victim 7, he turned and aimed his rifle at a white male Tops employee ("Victim 8"), who, at some point during the attack, had been shot in the leg and injured. Rather than shooting him, GENDRON said, "sorry," to Victim 8, before moving

on through the rest of the store in search of more Black people to shoot and kill. At some point during the attack, one of the shots also struck a white female Tops employee ("Victim 9") in the pharmacy area of the store, which is located near the checkout lanes. Victims 8 and 9 survived the attack.

11.     Next, GENDRON walked through the store's checkout lane, and shot and killed a Black person ("Victim 10"), who was in that area. GENDRON then moved through the aisles of the store and shot and killed three additional Black people ("Victim 11", "Victim 12", and "Victim 13"). GENDRON, still armed with the rifle, ultimately returned to the front of the store.

12.     As GENDRON was shooting inside the store, numerous customers and Tops employees ran to the rear of the store and took shelter in a stock room, a conference room, a freezer, and a dairy cooler. Many others fled the store through the rear door.

13.     When GENDRON returned to the front of the store, members of the Buffalo Police Department ("BPD") encountered him and took him into custody. At that time, officers recovered the rifle used in the attack from GENDRON. The rifle had various writings on it, including, but not limited to, the names of others who have committed mass shootings, racial slurs, the statement "Here's your reparations!," and the phrase "The Great Replacement." Law enforcement later determined that GENDRON live-streamed part of the attack on the Internet. Ballistics evidence recovered at the Tops indicates that GENDRON fired approximately 60 shots during the attack.

14.     After GENDRON was arrested, BPD officers recovered a loaded 12-gauge shotgun, a loaded bolt-action rifle, and three loaded rifle magazines from the Taurus.

15.     On May 15, 2022, the FBI executed a federal search warrant at GENDRON's home in Conklin, New York. During the search, the FBI recovered a handwritten note in GENDRON's bedroom in which GENDRON[1] apologized to his family for committing "this attack" and stated that he "had to commit this attack" because he cares "for the future of the White race." The FBI also recovered from GENDRON's bedroom a receipt for the purchase of a candy bar at the Tops on March 8, 2022, and handwritten sketches of what appear to be the interior layout of the Tops.

### GENDRON'S PLANNING AND PREPARATION FOR THE TOPS ATTACK

16.     In the months preceding the attack, GENDRON wrote a self-described manifesto[2] containing a detailed plan to shoot and kill Black people at the Tops at 1275 Jefferson Avenue[3] using a Bushmaster XM-15 rifle, a diagram of the interior layout of the store, a discussion of the clothing and equipment that he would use during the attack (including a helmet, body armor, and GoPro camera), and statements that his motivation for

---

[1] GENDRON signed the note and addressed it to his family.

[2] Law enforcement recovered a laptop computer in GENDRON's Taurus, which contained a draft working copy of the manifesto. Additionally, law enforcement recovered a version of the self-described manifesto on the internet.

[3] The manifesto referred to the planned attack taking place in the zip code 14208, and the Tops located at 1275 Jefferson Avenue is within zip code 14208. In addition, as detailed herein, GENDRON specifically identified the Tops at 1275 Jefferson Avenue as the target of the attack in posts made to his Discord account.

the attack was to prevent Black people from replacing white people and eliminating the white race, and to inspire others to commit similar racially-motivated attacks. Specifically, GENDRON wrote the following in the manifesto:

    a.    that he is "ethnically white," has never been diagnosed with "a mental disability or disorder," and that he was "perfectly sane";

    b.    that he was "a White man seeking to protect and serve my community, my people, my culture, and my race";

    c.    that he was "the sole perpetrator of this attempted mass shooting";

    d.    that he had been preparing for the attack for a few years, and he "actually got serious" about the attack in the beginning of January 2022;[4]

    e.    that the goals of the attack were to "Kill as many blacks as possible," "Avoid dying," and "Spread ideals";

    f.    that he was targeting Black people because "[t]hey are an obvious, visible, and large group of replacers . . . that seek to occupy my peoples [sic] lands and ethnically replace my own people . . .";

    g.    that he selected a target in the area code 14208 because it has the highest percentage of Black people close enough to where he lives;

    h.    that he selected the Tops store in area code 14208 because it is where a high percentage and high density of Black people can be found;

    i.    that he made a map of the inside of the Tops store "and decided the best plan of attack for highest chance of success";

    j.    that he was inspired to commit the attack by other racially-motivated mass murderers; and

    k.    that he would livestream a video of the attack and publish the manifesto online "to increase coverage and spread [his] beliefs."

---

[4] On January 19, 2022, GENDRON purchased the Bushmaster XM-15, .223 caliber rifle that he used during the Tops attack.

17.     GENDRON also chronicled the progress and development of his plan on his Discord account in the months leading up to the attack.[5] He stated that his motivation for the attack was to prevent Black people from replacing white people and eliminating the white race, and to inspire others to commit similar racially-motivated attacks. He also wrote about his acquisition of firearms, ammunition, firearm magazines, body armor, a GoPro camera, and other supplies for the attack; his testing of the firearms, ammunition, firearm magazines, and GoPro camera, in preparation for the attack; his drafting of the above-described manifesto; his selection of the Tops as the target of the attack; and his drafting of a "goodbye letter" to his family (which is believed to be the apology letter found in his bedroom).

18.     Based on GENDRON's Discord entries and other evidence gathered during this investigation, I determined that GENDRON traveled to the Tops to scout the location on several occasions prior to the attack. On March 8, 2022, he went to the Tops at least three times. During those trips, he created two sketches of the interior layout of the store (which are believed to be the sketches found in his bedroom), counted the number of Black people present inside and outside the store, observed the presence of two armed Black security guards, and noted the number of Black people in the area of the cash registers. In the afternoon on May 13, 2022, the day before the attack, he went to the Tops and spent time in front of and inside the store. Finally, at approximately noon on May 14, 2022, only two and a half hours before the attack, he went to the Tops and observed a "healthy amount of old and young" Black people in the store and noted where the security guard was positioned.

---

[5] GENDRON's Discord posts were not available to the public until he shared them with other users shortly before the attack.

## CONCLUSION

19.     I submit that, based on the evidence described in this affidavit, there is probable cause to believe that GENDRON violated 18 U.S.C. § 249(a)(1) by shooting and killing Victims 1, 3 through 7, and 10 through 13, because of their actual and perceived race and color. This complaint alleges 10 counts of hate crimes resulting in death, one for each of Victims 1, 3 through 7, and 10 through 13.

20.     I further submit that, based on the evidence described in this affidavit, there is probable cause to believe that GENDRON violated 18 U.S.C. § 249(a)(1) by shooting and attempting to kill Victim 2 because of Victim 2's actual and perceived race and color, and by causing the shooting of Victims 8 and 9, while he was attempting to kill Black people at the Tops because of their actual and perceived race and color.[6] This complaint alleges three counts of hate crimes involving bodily injury and an attempt to kill, one for each of Victims 2, 8, and 9.

21.     I further submit that, based on the evidence in this affidavit, there is probable cause to believe that GENDRON violated 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1) as to Victims 1, 3 through 7, and 10 through 13.  There is probable cause that GENDRON, during and in relation to the commission of a crime of violence for which he may be prosecuted in a court of the United States, that is, the 10 counts of hate crimes resulting in death alleged in the complaint, knowingly used and carried a firearm. There is further probable cause to

---

[6] The doctrine of transferred intent permits the transfer of the intent to kill when a perpetrator shoots at one person with the intent to kill, but inadvertently strikes another person. *See United States v. Rahman*, 189 F.3d 88, 141 (2d Cir. 1999).

believe that GENDRON discharged a firearm during the course of each of the said offenses. I further submit that – based on GENDRON's extensive efforts to plan and prepare for the attack at Tops, and his stated goal of killing as many Black people as possible during the attack – there is probable cause to believe that GENDRON committed the killings with malice aforethought and, therefore, such killings constituted murders within the meaning of 18 U.S.C. § 1111. This complaint alleges 10 counts of use and discharge of a firearm to commit murder during and in relation to a crime of violence, one for each of Victims 1, 3 through 7, and 10 through 13.

22.     I further submit that, based on the evidence in this affidavit, there is probable cause to believe that GENDRON violated 18 U.S.C. § 924(c)(1)(A)(iii) as to Victims 2, 8, and 9. There is probable cause that GENDRON, during and in relation to the commission of a crime of violence for which he may be prosecuted in a court of the United States, that is, the three counts of hate crimes involving an attempt to kill alleged in the complaint, knowingly used and carried a firearm. There is further probable cause to believe that GENDRON discharged a firearm during the course of each of the said offenses. This complaint alleges three counts of use and discharge of a firearm during and in relation to a crime of violence, one for each of Victims 2, 8, and 9.

**WHEREFORE,** based on the foregoing, I submit there is probable cause to believe that, on or about May 14, 2022, in the Western District of New York, PAYTON GENDRON committed violations of 18 U.S.C. §§ 249(a)(1) (hate crime resulting in death and hate crime involving bodily injury and attempt to kill), 924(c)(1)(A)(iii) and 924(j)(1)  (use of a firearm

10

to commit murder during and in relation to a crime of violence), and 924(c)(1)(A)(iii) (use and discharge of a firearm during and in relation to a crime of violence).

*Christopher J. Dlugokinski*

CHRISTOPHER J. DLUGOKINSKI
FBI Special Agent

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d) on June __15__, 2022:

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge
Western District of New York

**EXHIBIT E**

# IN UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Cutberto Viramontes, an individual and resident of Cook County, Illinois; | : |
| | : No. |
| Rubi Joyal, an individual and resident of Cook County, Illinois; | : |
| | : |
| Christopher Khaya, an individual and resident of Cook County, Illinois; | : |
| | : |
| SECOND AMENDMENT FOUNDATION; *and* | : |
| | : |
| FIREARMS POLICY COALITION, INC., | : |
| | : |
| *Plaintiffs*, | : **COMPLAINT** |
| | : |
| v. | : |
| | : |
| THE COUNTY OF COOK, a body politic and corporate; | : |
| | : |
| TONI PRECKWINKLE, in her official capacity as County Board President and Chief Executive Officer of Cook County; | : |
| | : |
| KIMBERLY M. FOXX, in her official capacity as State's Attorney; *and* | : |
| | : |
| THOMAS DART, in his official capacity as Sheriff, | : |
| | : |
| *Defendants*. | : |
| | : |

Plaintiffs CUTBERTO VIRAMONTES, RUBI JOYAL, CHRISTOPHER KHAYA, SECOND AMENDMENT FOUNDATION ("SAF"), and FIREARMS POLICY COALITION, INC. ("FPC") (collectively, "Plaintiffs"), by and through counsel of record, bring this complaint against Defendants, the County of Cook, Illinois, and county officials responsible for enacting and

enforcing a county ordinance infringing the right of law-abiding citizens to keep and bear commonly possessed firearms for defense of self and family and for other lawful purposes, and allege as follows:

## INTRODUCTION

1.      The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under this constitutional provision, citizens such as Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya who are legally eligible to possess and acquire firearms, have a fundamental, constitutionally guaranteed right to keep common firearms for defense of self and family and for other lawful pursuits.

2.      But Defendants have enacted and enforced a flat prohibition on the gift, transfer, acquisition, carry, or possession, of many common semiautomatic rifles—tendentiously labeled "assault weapons"—by ordinary citizens, making it criminal for law-abiding citizens to exercise their fundamental right to keep and bear such arms. *See* Code of Ordinances of Cook Cnty., Ill. §§ 54-212, 54-214(a) (Dec. 15, 2020), https://bit.ly/2Lcts75.

3.      The County's very limited exemptions for certain persons from this broad criminal statute do not allow typical law-abiding citizens to keep and bear these common firearms. *See id.* § 54-212(a).

4.      Defendants' enactment and enforcement of Cook County's prohibition on common semiautomatic rifles tendentiously and inaccurately labelled assault weapons denies individuals who reside in the County, including individual Plaintiffs and members of SAF and FPC, their fundamental, individual right to keep and bear common arms.

5.      To be sure, Plaintiffs acknowledge that the result they seek is contrary to *Wilson v. Cook County*, 937 F.3d 1028 (7th Cir. 2019), and *Friedman v. City of Highland Park*, 784 F.3d

406 (7th Cir. 2015), but Plaintiffs submit those cases were wrongly decided. They therefore institute this litigation to vindicate their Second Amendment rights and seek to have *Wilson* and *Friedman* overruled.

## JURISDICTION & VENUE

6.      This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

8.      Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

9.      Plaintiff Cutberto Viramontes is a natural person, a resident of Cook County, Illinois, an adult over the age of 21, a citizen of the United States and the State of Illinois, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Cutberto Viramontes is a member of Plaintiffs SAF and FPC.

10.     Plaintiff Rubi Joyal is a natural person, a resident of Cook County, Illinois, an adult over the age of 21, a citizen of the United States and the State of Illinois, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Rubi Joyal is a member of Plaintiffs SAF and FPC.

11.     Plaintiff Christopher Khaya is a natural person, a resident of Cook County, Illinois, an adult over the age of 21, a citizen of the United States and the State of Illinois, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Christopher Khaya is a member of Plaintiffs SAF and FPC.

12.     Plaintiff Second Amendment Foundation ("SAF") is a 501(c)(3) nonprofit

educational foundation incorporated in 1974 under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical, and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF has members nationwide, including in Cook County. SAF brings this action on behalf of its members, including Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya, who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in Cook County.

13.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights, especially, but not limited to, the fundamental, individual Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of its members, including Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya , who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in Cook County.

14.     Defendant the County of Cook is a county in the State of Illinois. It is "a body politic and corporate" that "may . . . be sued." 55 Ill. Comp. Stat. Ann. 5/5-1001. As a county with an elected chief executive officer, it is permitted, under Illinois law, to "(1) exercise any power and perform any function pertaining to its government and affairs, or (2) exercise those powers within traditional areas of county activity, except as limited by the Illinois Constitution or a proper limiting statute, notwithstanding effects on competition." 55 Ill. Comp. Stat. Ann. 5/2-5016; *see*

*also* Ill. Const. art. VII, § 6. The County has exercised that power to pass its unconstitutional ban on rifles mischaracterized as assault weapons.

15.     Defendant Toni Preckwinkle is President of the Cook County Board of Commissioners and the chief executive officer of the County. *Office of the President*, Cook County Government, https://bit.ly/2X1nmJq (last visited Dec. 31, 2020). As such, she is empowered to approve or veto any ordinance passed by the Board, 55 Ill. Comp. Stat. Ann. 5/2-5010, and obliged to "see that all of the orders, resolutions and regulations of the board are faithfully executed," *id.* 5/2-5009(a). The President approved the County's unconstitutional ban on rifles mischaracterized as assault weapons. *See Cook County Board Bans Assault Weapons, Toughens Penalties*, Cook County Government (July 17, 2013), https://bit.ly/380I1Ut.

16.     Defendant Kimberly M. Foxx is State's Attorney for Cook County, Illinois. In such capacity, Foxx enforces the County's ordinances, including its unconstitutional ban on rifles mischaracterized as assault weapons. *See* 55 Ill. Comp. Stat. Ann. 5/3-9005. Foxx's ongoing enforcement of the "assault weapons" ban against Cook County residents places Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya under imminent threat of prosecution should they violate the ban, which leaves them unable to keep common firearms. All similarly situated members of SAF and FPC in Cook County face the same clear threat of enforcement.

17.     Defendant Thomas Dart is the Sheriff of Cook County, Illinois. In such capacity, Dart enforces the County's ordinances, including its unconstitutional ban on rifles mischaracterized as assault weapons. *See* 55 Ill. Comp. Stat. Ann. 5/3-6019; Code of Ordinances of Cook Cnty., Ill. §§ 54-212(b)–(c), 54-213 (Dec. 15, 2020), https://bit.ly/2Lcts75. Dart's ongoing enforcement of the "assault weapons" ban against Cook County residents places Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya under imminent threat of arrest and

suffering confiscation should they violate the ban, which leaves them unable to keep common firearms. All similarly situated members of SAF and FPC in Cook County face the same clear threat of enforcement.

## FACTUAL ALLEGATIONS

### I.   COOK COUNTY'S UNCONSTITUTIONAL ORDINANCE

18.   In November 2006, the Cook County Board of Commissioners enacted, and in July 2013 they revised, the Blair Holt Assault Weapons Ban ("the Ordinance").

19.   In current form, the Ordinance labels many firearms in common use "assault weapon[s]" and criminalizes any act to "manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire, carry or possess" such firearms in Cook County. Code of Ordinances of Cook Cnty., Ill. §§ 54-211, 54-212(a) (Dec. 15, 2020), https://bit.ly/2Lcts75.

20.   This criminal prohibition "appl[ies] to all persons in Cook County," excepting only an "officer, agent, or employee of Cook County or any other municipality or state or of the United States, members of the armed forces of the United States; or the organized militia of this or any other state; or peace officers to the extent that any such person named in this subsection is otherwise authorized . . . and does so while acting in the scope of his or her duties." *Id.* §§ 54-210, 54-212(a)(1).[1]

21.   Any ordinary person in Cook County who legally possessed a so-called "assault weapon" before enactment must, under the Ordinance, remove it from county limits, modify it to render it permanently inoperable, or surrender it to the Sheriff. *Id.* § 54-212(c).

22.   The Ordinance declares "assault weapon[s]" to be "contraband"; it requires the

---

[1] The ban does not apply either to "[t]ransportation of assault weapons . . . if such weapons are broken down and in a nonfunctioning state and are not immediately accessible to any person." *Id.* §§ 54-212(a)(2).

Sheriff to seize such firearms and, if he ascertains that they are not "needed as evidence in any matter," to destroy them. *Id.* §§ 54-212(b), 54-213.

23. A first-time violation of the Ordinance is a crime punishable by a $10,000 fine and six months in prison. *Id.* § 54-214(a).

## II.   THE ORDINANCE BANS RIFLES IN COMMON USE

24. The Ordinance bans as an "assault weapon" any semiautomatic rifle with a capacity to accept a magazine holding more than ten rounds of ammunition, if it has any of the following features:

> (A) Only a pistol grip without a stock attached;
> (B) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;
> (C) A folding, telescoping or thumbhole stock;
> (D) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or
> (E) A muzzle brake or muzzle compensator.

*Id.* § 54-211, *Assault weapon* ¶ (1); *see also id.*, *Large-capacity magazine*.

25. Further, the Ordinance bans any "[c]onversion kit, part or combination of parts, from which an assault weapon can be assembled if those parts are in the possession or under the control of the same person." *Id.* ¶ (6).

26. Finally, the Ordinance lists these specific examples of banned "assault weapons models":

> (A) The following rifles or copies or duplicates thereof:
>
> (i)   AK, AKM, AKS, AK-47, AK-74, ARM, MAK90, Misr, NHM 90, NHM 91, SA 85, SA 93, VEPR, Rock River Arms LAR-47, Vector Arms AK-47, VEPR, WASR-10, WUM, MAADI, Norinco 56S, 56S2, 84S, and 86S;
> (ii)  AR-10;
> (iii) AR-15, Bushmaster XM15, Bushmaster Carbon 15, Bushmaster ACR, Bushmaster MOE series, Armalite M15, Armalite M15-T and Olympic Arms PCR;
> (iv)  AR70;
> (v)   Calico Liberty;

(vi)     Dragunov SVD Sniper Rifle or Dragunov SVU;

(vii)    Fabrique National FN/FAL, FN/LAR, or FNC;

(viii)   Hi-Point Carbine;

(ix)     HK-91, HK-93, HK-94, HK-USC and HK-PSG-1;

(x)      Kel-Tec Sub Rifle, Kel-Tec Sub-2000, SU-16, and RFB;

(xi)     Saiga;

(xii)    SAR-8, SAR-4800;

(xiii)   KS with detachable magazine;

(xiv)    SLG 95;

(xv)     SLR 95 or 96;

(xvi)    Steyr AUG;

(xvii)   Sturm, Ruger Mini-14, and Sturm, Ruger & Co. SR556;

(xviii)  Tavor;

(xix)    All Thompson rifles, including Thompson 1927, Thompson M1, Thompson M1SB, Thompson T1100D, Thompson T150D, Thompson T1B, Thompson T1B100D, Thompson T1B50D, Thompson T1BSB, Thompson T1-C, Thompson T1D, Thompson T1SB, Thompson T5, Thompson T5100D, Thompson TM1, Thompson TM1C and Thompson 1927 Commando;

(xx)     Uzi, Galil and Uzi Sporter, Galil Sporter, or Galil Sniper Rifle (Galatz);

(xxi)    Barret REC7, Barrett M82A1, Barrett M107A1;

(xxii)   Colt Match Target Rifles;

(xxiii)  Double Star AR Rifles;

(xxiv)   DPMS Tactical Rifles;

(xxv)    Heckler & Koch MR556;

(xxvi)   Remington R-15 Rifles;

(xxvii)  Rock River Arms LAR-15;

(xxviii) Sig Sauer SIG516 Rifles, SIG AMT, SIG PE 57, Sig Saucer SG 550, and Sig Saucer SG 551;

(xxix)   Smith & Wesson M&P15;

(xxx)    Stag Arms AR;

(xxxi)   Baretta CX4 Storm;

(xxxii)  CETME Sporter;

(xxxiii) Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR 110C;

(xxxiv)  Fabrique Nationale/FN Herstal FAL, LAR, 22 FNC, 308 Match, L1A1 Sporter, PS90, SCAR, and FS2000;

(xxxv)   Feather Industries AT-9;

(xxxvi)  Galil Model AR and Model ARM;

(xxxvii)         Springfield Armory SAR-48;

(xxxviii)        Steyr AUG;

(xxxix)  UMAREX UZI Rifle;

(xl)     UZI Mini Carbine, UZI Model A Carbine, and UZI Model B Carbine;

(xli)    Valmet M62S. M71S, and M78;

(xlii)   Vector Arms UZI Type;

(xliii)  Weaver Arms Nighthawk; and

(xliv)   Wilkinson Arms Linda Carbine.

*Id.* ¶ (7).

27.     Semiautomatic rifles "traditionally have been widely accepted as lawful possessions," *see Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15 semiautomatic rifle), and they too are in common use presently, *see Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use' as the plaintiffs contend."). Indeed, counting just "modern sporting rifles" (a category that includes semiautomatic AR-style and AK-style rifles), the number in circulation today approaches (and may exceed) twenty million. Indeed, a recent survey of gun owners indicates that about 24.6 million Americans have owned an AR-15 or similar rifle. *See* William English, 2021 National Firearms Survey at 1, https://bit.ly/3rYa13k. According to industry sources, more than one out of every five firearms sold in certain recent years were semiautomatic modern sporting rifles.

28.     The banned semiautomatic rifles, like all other semiautomatic firearms, fire only one round for each pull of the trigger. They are not machine guns. *See Staples*, 511 U.S. at 602 n.1. What is more, the designation "assault weapons" is a complete misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *See Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting).

29.     Rifles built on an AR-style platform are a paradigmatic example of the type of arm Cook County bans. AR-15 rifles, for example, are among the most popular firearms in the nation, and they are owned by millions of Americans.

30.     Central among the common uses of rifles banned in Cook County is defense of self in the home. For example, most AR-style firearms are chambered for 5.56x45mm NATO (similar to .223 Remington) ammunition, a relatively inexpensive and common cartridge that is particularly

well suited for home-defense purposes because it has sufficient stopping power in the event a home

intruder is encountered but loses velocity relatively quickly after passing through a target and other

objects, thus decreasing the chance that an errant shot will strike an unintended target. Although

most pistol rounds have less muzzle velocity than a 5.56x45mm NATO round, they have greater

mass, maintain velocity after passing through walls and other objects, and pose substantially

greater risk to unintended targets in the home. An AR-15 rifle chambered for 5.56x45mm NATO

ammunition is an optimal firearm to rely on in a self-defense encounter.

31.     Like the AR-15 generally, the specific features banned by the Ordinance aid home

defense. Folding, telescoping, and thumbhole stocks[2] reduce length- or weight-based obstacles to

maneuverability without sacrificing the stability and thus accuracy that stocks may provide. *See*

David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381,

398–99 (1994).

32.     Muzzle brakes or compensators, thumbhole stocks, and protruding grips for non-

trigger hands all reduce the "kick" or recoil in discharging a rifle and thereby enhances accurate

fire (in particular for individuals of smaller stature, including, of course, many women).

33.     Absent, folding, and telescoping stocks also increase the likelihood of successful

home defense by permitting safe storage of defense instruments in accessible spaces.

34.     Most common semiautomatic rifles, including those banned under the Ordinance,

can accept a detachable magazine. Detachable magazines not only assist law-abiding shooters to

---

[2] A folding stock, of course, folds toward the rest of the firearm.  A telescoping stock allows the length of the stock to be shortened or lengthened, consistent with the length of a person's arms. A thumbhole stock is partially carved out, reducing its weight and allowing the stock-holding thumb greater control over the weapon.

reload their weapon in stressful defense circumstances, but in the case of some platforms, including the AR-15, they are required to safely and quickly remedy malfunctions.

35.    Encounters with criminal intruders in the home are not uncommon.  For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property. Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. of Crim. L. & Criminology 150, 164 (1995).

36.    Other common, lawful uses of the banned rifles are hunting and sport. At least a third of all gun-owners own a firearm for hunting or sport shooting, and recreational target shooting has been cited as the top reason, albeit closely followed by home defense, for owning a modern sporting rifle.

37.    Here again, the banned features of rifles mischaracterized as assault weapons serve lawful purposes. Folding and telescoping stocks, for example, allow for safe transportation, including in a hiking pack, an ATV, or a boat. These stocks, as well as thumbhole stocks, also ease carrying over long distances while hunting. Detachable magazines have the same benefits in hunting and sport-shooting as they do in home defense—improved reloading and remedying of malfunctions. Muzzle brakes or compensators, thumbhole stocks, and protruding grips for non-trigger hands open hunting and sport-shooting to those for whom recoil represents a high barrier to entry. Lastly, a "shroud attached to the barrel . . . allow[s] the bearer to hold the firearm with

the non-trigger hand without being burned," a safety-enhancing feature that the Ordinance admits even while banning it.  *Id.* § 54-211, *Assault weapon* ¶¶ (1), (3), (4).

38.     By contrast, one use that is not common for so-called "assault rifles" is crime. According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes." This has long been true. *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.' "). Indeed, according to FBI statistics in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.), and 397 with blunt objects. *See* Expanded Homicide Table 8, Crime in the United States (FBI 2019), https://bit.ly/3IHABwE.

39.     The Ordinance's ban on acquiring, purchasing, receiving, transporting, possessing, and lawfully using an "assault weapon" is, therefore, a ban on keeping and bearing semiautomatic rifles that are commonly and overwhelmingly possessed and used for lawful purposes, including self-defense in the home.

### III.    THE EFFECT ON PLAINTIFFS

40.     Plaintiff Cutberto Viramontes lives in Chicago in Cook County. Viramontes intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly a Smith and Wesson M&P rifle, for lawful purposes, especially for self-defense. The Smith and Wesson M&P as an AR-15 style rifle that is explicitly identified as illegal in the Ordinance. Viramontes would acquire, purchase or receive, as well as transport, possess, and lawfully use this firearm, were it not for Defendants' enactment and enforcement of Cook County's outright ban on these common arms. But in light of Defendants' actions, including their threats of arrest, confiscation, prosecution, fine and imprisonment, Viramontes continues to refrain from acquiring, purchasing, receiving, transporting, possessing, or lawfully using an M&P AR -15 rifle or any

similar firearm, for self-defense and other lawful purposes.

41.    Plaintiff Rubi Joyal lives in Chicago in Cook County. Joyal intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly a Smith and Wesson M&P, for lawful purposes, especially for self-defense. The Smith and Wesson M&P is an AR-15 style rifle that is explicitly identified as illegal in the Ordinance. Joyal would acquire, purchase or receive, as well as transport, possess, and lawfully use this firearm, were it not for Defendants' enactment and enforcement of Cook County's outright ban on these common arms. But in light of Defendants' actions, including their threats of arrest, confiscation, prosecution, fine and imprisonment, Joyal continues to refrain from acquiring, purchasing, receiving, transporting, possessing, or lawfully using an M&P AR-15 rifle or any similar firearm, for self-defense and other lawful purposes.

42.    Plaintiff Christopher Khaya lives in Chicago in Cook County. Khaya intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly an IMI Galil rifle, for lawful purposes, especially for self-defense. The IMI Galil is an AR-15 styled semi-automatic rifle that is explicitly identified as illegal in the Ordinance. Khaya would acquire, purchase or receive, as well as transport, possess, and lawfully use this firearm, were it not for Defendants' enactment and enforcement of Cook County's outright ban on these common arms. But in light of Defendants' actions, including their threats of arrest, confiscation, prosecution, fine and imprisonment, Khaya continues to refrain from acquiring, purchasing, receiving, transporting, possessing, or lawfully using an IMI Galil rifle or any similar firearm, for self-defense and other lawful purposes.

43.    Members of Plaintiffs SAF and FPC intend and desire to acquire, purchase, receive, transport, possess, or lawfully use semiautomatic rifles banned by the challenged provisions, and

are subject to and adversely affected by the restrictions articulated in this complaint on "assault weapons."

44.     But for the enactment and enforcement of the Ordinance, these members would forthwith obtain and possess such rifles, but cannot do so because they are considered "assault weapons."

45.     But for Defendants' enactment and enforcement of an unconstitutional Ordinance, and Defendants' enforcement thereof, and the criminal penalties associated with violations of the Ordinance, members of Plaintiffs SAF or FPC, including Plaintiffs Cutberto Viramontes, Rubi Joyal, and Christopher Khaya would exercise their right to keep and bear the banned firearms for lawful purposes, including self-defense, without the fear or risk of arrest and prosecution for engaging in constitutionally protected, lawful conduct.

## IV.   DEFENDANTS' LAWS AND REGULATIONS VIOLATE THE SECOND AMENDMENT.

46.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

47.     The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

48.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

49.     "The very enumeration of the right [to keep and bear arms] takes out of the hands

-14-

of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008).

50.     "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634–35.

51.     At the same time, indeed for this reason, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582 (citations omitted).

52.     The rifles at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. And they are, moreover, exactly what they would bring to service in militia duty, should such be necessary. As the Southern District of California recently explained in finding California's "assault weapons" ban unconstitutional, "the AR-15 rifle is the perfect combination of home defense weapon and homeland defense equipment." *Miller v. Bonta*, 2021 WL 2284132 (S.D. Cal. June 4, 2021).

53.     In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592.

54.     This is "'a natural right which the people have reserved to themselves, confirmed by the Bill of Rights.'" *Id.* at 594 (quoting A Journal of the Times: Mar. 17, New York Journal, Supp. 1, Apr. 13, 1769).

55.     When seconds count, and the police are minutes or hours away, if they come at all—they certainly have no obligation to, *see, e.g., Town of Castle Rock v. Gonzales*, 545 U.S. 748

(2005)—the People have a constitutional right to make use of common firearms for effective self-defense and not to be disarmed by the enactment and enforcement of the Ordinance.

56.     Further, the Second Amendment protects "arms . . . of the kind in common use . . . for lawful purposes like self-defense." *Heller*, 554 U.S. at 624 (quotation marks and citation omitted).

57.     Assuming ordinary citizens are not disqualified from exercising Second Amendment rights, the State must permit them to keep and bear common rifles for lawful purposes.

58.     The right to keep and bear common rifles guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prohibit ordinary, law-abiding citizens from keeping and bearing common firearms—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

59.     The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Id.* at 636.

60.     Yet, this is precisely how the Ordinance in Cook County operates, completely shutting out ordinary, law-abiding citizens from exercising their rights in the County.

## COUNT ONE

### 42 U.S.C. § 1983 Action for Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the United States Constitution

61.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

62.     There is an actual and present controversy between the parties.

63.     The Second and Fourteenth Amendments to the United States Constitution guarantee ordinary, law-abiding citizens of states their fundamental right to keep and bear arms, both in the home and in public.

64.     The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

65.     The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire, purchase, receive, transport, possess, and lawfully use common rifles for all lawful purposes, including self-defense.

66.     Under paragraphs 1 and 3 through 6 of the "Assault weapon" definition in section 54-211 of the Code of Ordinances of Cook County, Illinois, in combination with sections 54-210 and 54-212 through 54-214 of the same, the County bans rifles that are commonly used for lawful purposes, grounding this ban on features that do not make a firearm more powerful or dangerous. No adequate basis exists for such a ban.

67.     Also banned under sections 54-210 and 54-212 through 54-214 are semiautomatic rifles permitted under federal law but listed in paragraph 7 of the "Assault weapon" definition in section 54-211. No adequate basis exists to restrict such firearms, which fire only once per trigger pull, like all other semiautomatic firearms.

68.     42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

69.     Defendants, individually and collectively, and under color of state law at all relevant times, have deprived the fundamental constitutional rights of persons in the County of Cook, including Plaintiffs Cutberto Viramontes, Rubi Joyal, Christopher Khaya, and all similarly situated members of Plaintiffs SAF or FPC through enactment and enforcement of the Ordinance.

70.     For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## **PRAYER FOR RELIEF**

71.     WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.      A declaratory judgment that the Ordinance's ban on semiautomatic rifles and all related regulations, policies, and/or customs designed to enforce or implement the same, prevent Plaintiffs Cutberto Viramontes, Rubi Joyal, Christopher Khaya, and all similarly situated members of Plaintiffs SAF or FPC, from exercising their fundamental right to keep and bear arms, including by acquiring, purchasing, receiving, transporting, possessing, and lawfully using common semiautomatic rifles banned under the Ordinance for all lawful purposes including self-defense, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

b.      A preliminary and permanent injunction prohibiting each Defendant, and each Defendant's respective employees, officers, agents, representatives, all those acting in concert or participation with him or her, from enforcing the Ordinance's ban on semiautomatic rifles and all related regulations, policies, and/or customs designed to enforce or implement the same;

c.      An award of nominal damages against Defendant County of Cook;

d.      Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

e.      Any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: August 27, 2021                           Respectfully submitted,

                                                 /s/ Christian D. Ambler
                                                     Christian D. Ambler – ARDC#6228749
                                                 STONE & JOHNSON, CHTD.
                                                 111 West Washington Street
                                                 Suite 1800
                                                 Chicago, Illinois 60602
                                                 (312) 332-5656
                                                 cambler@stonejohnsonlaw.com

                                                 David H. Thompson*
                                                 Peter A. Patterson*
                                                 William V. Bergstrom*
                                                 COOPER & KIRK, PLLC
                                                 1523 New Hampshire Avenue, N.W.
                                                 Washington, D.C. 20036
                                                 (202) 220-9600
                                                 (202) 220-9601 (fax)
                                                 dthompson@cooperkirk.com
                                                 ppatterson@cooperkirk.com
                                                 wbergstrom@cooperkirk.com

                                                         *_Pro hac vice_ application
                                                         forthcoming

                                                 _Attorneys for Plaintiffs_

**EXHIBIT F**



# OFFICE OF THE ERIE COUNTY DISTRICT ATTORNEY

**JOHN J. FLYNN**
DISTRICT ATTORNEY

**MICHAEL J. KEANE**
FIRST DEPUTY DISTRICT ATTORNEY

June 24, 2022

<u>**Via Certified Mail**</u> &
<u>**E-mail**</u>: david.adelman@cookcountyil.gov

DAVID A ADELMAN, ESQ.
COOK COUNTY STATE'S
 ATTORNEY'S OFFICE
50 W. WASHINGTON, 5TH FLOOR
CHICAGO, IL 60602

   Re:  **Subpoena Duces Tecum dated June 7, 2022**
       **Viramontes, et al v. The County of Cook, et al (1:21-cv-04595)**

Dear Mr. Adelman:

   Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Erie County District Attorney's Office ("ECDA") states its objections to Cook County State's Attorney's Office's subpoena sent to my attention at the ECDA seeking the production of documents, which relate to the shooting at TOPS Friendly Markets Store, 1275 Jefferson Ave, Buffalo, NY 14208 on May 14, 2022 ("Subpoena"). ECDA is not a party to the above-referenced action.

   Since ECDA does not consent to receipt of the Subpoena via e-mail, these objections are timely served within 14 days of the service of the Subpoena. Fed. R. Civ. P. 45(d)(2)(B). In particular, ECDA states its objections to the Subpoena as follows:

   First, ECDA objects to the Subpoena because it seeks the production of documents to the Cook County State's Attorney's Office ("CCSAO") at an address in Chicago, Illinois from the ECDA's office located in Buffalo, New York. Because Chicago is well over 100 miles from Buffalo, the Subpoena is defective on its face. Fed. R. Civ. P. 45(c)(2)(A).

   Second, ECDA objects to the Subpoena because it seeks the production of documents barred under the Buffalo City Court's Order Regarding Extrajudicial Comments (Erie County DA Legacy No. 00877-2022). Specifically, the Order does not permit any discussion of facts or evidence associated with the prosecution of Payton Gendron - the accused perpetrator of the TOPS shooting on May 14, 2022. Accordingly, the release of any records is tantamount to violation of this Order. A copy of the Order was provided to you on June 22, 2022.

David A. Adelman, Esq.
June 24, 2022
Page -2-

Third, ECDA objects to the Subpoena because it is overly broad, unduly burdensome - particularly on a non-party governmental agency - and not relevant or reasonably calculated to the discovery of admissible evidence. Except for privileged items, the Subpoena seeks the <u>unlimited</u> production of documents during a pending criminal proceeding in Erie County relating to the TOPS shooting on May 14, 2022. Fed. R. Civ. P. 45(d)(3)(A)(iv); *see Champion Pro Consulting Group, Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2014 WL 6686727, at *4 (M.D.N.C. November 26, 2014).

The Subpoena also seeks information referencing "any other victim," or which is "related to" a particular topic. As such, ECDA objects on the ground that gathering documents containing any reference or relationship to a particular topic is also unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iv).

Fourth, ECDA objects to the Subpoena because it seeks disclosure of "other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). Specifically, it seeks the production of "all medical examiner reports," which are exempt from disclosure under New York law. Pursuant to New York's Freedom of Information Law provisions, the medical examiner reports are exempt from disclosure by state statute. NY Pub Off § 87(2)(a); NY County § 677(3)(b). Similarly, the Subpoena seeks the production of documents compiled for law enforcement purposes, the disclosure of which would deprive the defendant of his right to a fair trial or impartial adjudication. NY Pub Off § 87(2)(e)(ii).

Lastly, while the Subpoena seeks the production of incident reports, firearm reports, and other police records, which are subject to the law enforcement privilege, the Subpoena also states that it does not seek privileged materials. Given this contradiction in terms, ECDA objects to the production of such documents as unduly burdensome and protected under the law enforcement privilege. Furthermore, ECDA reserves the right to object to any materials that fall within the scope of the attorney-client privilege, work-product doctrine, or any other privilege under the Federal Rules of Civil Procedure.

For the above-mentioned reasons, please advise our office whether you will withdraw the Subpoena. Otherwise, as discussed, your office has consented to an extension to July 11, 2022 to move and/or respond to the Subpoena. Thank you for your anticipated courtesies in this regard.

Very truly yours,

JOHN J. FLYNN
DISTRICT ATTORNEY

PAUL J. WILLIAMS III
Assistant District Attorney
Chief, Appeals Bureau

PJW/kad